IN RE ROBINSON

[132 N.C. App. 122 (1999)]

━━━━━━━━━

IN THE MATTER OF: REMONE ROBINSON

No. COA98-165

(Filed 19 January 1999)

**1. Juveniles— transfer of case—disposition**

The trial court did not err in proceedings on juvenile petitions by refusing to change the venue of the dispositional hearing to the District of Columbia where the juvenile was in the custody of his mother, who resided in the District of Columbia, but was temporarily living with his uncle in Catawba County, North Carolina. There is no definition of the word "reside" in N.C.G.S. § 7A-558 and "residence" at common law meant a person's actual place of abode, whether permanent or temporary. Even if the juvenile resided outside the State of North Carolina, N.C.G.S. § 7A-558 refers to the transfer of juvenile cases to another district within North Carolina and there is no statutory provision requiring the

transfer of a juvenile delinquency proceeding to a foreign juris-
diction for disposition.

**2. Juveniles— commitment—alternatives—findings insufficient**

A juvenile order of commitment was remanded for a new dis-
positional hearing where the court counselor merely stated that
the juvenile "probably" would not be accepted into alternative
placements and there was no evidence of any attempts to investi-
gate alternatives to commitment.

Appeal by juvenile from Juvenile Disposition and Commitment
Order filed 17 December 1997 by Judge Timothy S. Kincaid in
Catawba County District Court. Heard in the Court of Appeals 6
October 1998.

*Attorney General Michael F. Easley, by Assistant Attorney
General Robin W. Smith, for the State.*

*Daniel R. Green, Jr. and Gregory D. Huffman, for juvenile-
appellant.*

GREENE, Judge.

Remone Robinson (the Juvenile) appeals from a Juvenile
Disposition and Commitment Order entered by the trial court on 17
December 1997.

On 8 December 1997, six juvenile petitions alleging delinquency
were issued against the Juvenile, a fourteen year old visiting his uncle
in Catawba County, North Carolina. He was in the custody of his
mother, who resided in the District of Columbia. The Juvenile was
alleged to have been in possession of alcoholic beverages, in posses-
sion of cocaine, in possession of stolen property, in possession of a
hand gun, and resisting arrest. At the adjudicatory hearing, the
Juvenile admitted to possession of stolen property and resisting
arrest. The other charges were dismissed by the district attorney.
After the adjudication, the Juvenile moved to change venue of the dis-
positional hearing to the District of Columbia on the grounds that he
was a resident there. This motion was denied and the trial court pro-
ceeded with the dispositional hearing. The Juvenile's attorney argued
that because this was the Juvenile's first juvenile disposition and
because no alternatives to commitment had been attempted, commit-
ment to the Division of Youth Services was not appropriate. A social
worker testified that "at this time nor in the foreseeable future do we

have any resources for placement of this young man to be anywhere near appropriate." The juvenile court counselor testified that alternative placements "probably [will] not accept [the Juvenile]." With respect to two specific alternative placements suggested by the Juvenile's attorney, the social worker stated: "I can guarantee that he would not be accepted at either, or deemed appropriate for either program."

The trial court, in committing the Juvenile to the Division of Youth Services, found he was a resident of Catawba County, would be a "threat to persons or property in the community," and alternatives to commitment "have been attempted unsuccessfully or were considered and found to be inappropriate."

---

The issues presented are whether: (I) the Juvenile "resides" in Catawba County; and (II) there is sufficient evidence in this record to support the finding that alternatives to Division of Youth Services commitment were inappropriate.

I

[1] On the motion of any juvenile, the trial court "shall transfer the proceeding to the court in the district where the juvenile resides for disposition." N.C.G.S. § 7A-558(a)(3) (1995). There is no dispute in this case that the trial court had jurisdiction to *adjudicate* the petitions. N.C.G.S. § 7A-523(a) (1995) (district court has exclusive jurisdiction over any juvenile alleged to be delinquent); N.C.G.S. § 7A-558(a) (1995) ("A proceeding in which a juvenile is alleged to be delinquent . . . shall be commenced and adjudicated in the district in which the offense is alleged to have occurred."). Instead, the Juvenile argues he "resides" in the District of Columbia, and therefore the trial court was required to transfer his case to the District of Columbia for disposition. We disagree.

As there is no definition of the word "reside" in section 7A-558, and because the word is clear and unambiguous, we are required to give the word its plain and definite meaning. *See Underwood v. Howland, Comr. of Motor Vehicles*, 274 N.C. 473, 479, 164 S.E.2d 2, 6 (1968). Residence, at common law, had reference to "a person's actual place of abode, whether permanent or temporary." *Sheffield v. Walker*, 231 N.C. 556, 559, 58 S.E.2d 356, 359 (1950).

In this case, all the evidence shows that the Juvenile was in the custody of his mother, who lived in the District of Columbia, and, at

the time of the delinquent offenses, he was temporarily living with his uncle in Catawba County, North Carolina. Thus, for the purposes of section 7A-558, the Juvenile resided in Catawba County at the time of the offenses and the trial court correctly proceeded with disposition in that district.

In any event, even if we had determined that the Juvenile resided outside the State of North Carolina, we do not read section 7A-558 as mandating that the trial court transfer the disposition of a juvenile delinquency proceeding to a foreign jurisdiction. Section 7A-558 is more properly construed to have reference to the transfer of such cases to another district within this State. There is no statutory provision requiring the transfer of a juvenile delinquency proceeding, properly filed in this State, to a foreign jurisdiction for disposition.[1]

II

[2] There is agreement among the parties to this appeal that a commitment to the Division of Youth Services can occur only if the alternatives to commitment listed in sections 7A-647, 7A-648, and 7A-649 "have been attempted unsuccessfully or were considered and found to be inappropriate." N.C.G.S. § 7A-652(a) (Supp. 1997). The trial court found these alternatives "were considered and found to be inappropriate." This finding, however, to be sustained, must be supported by evidence in the record. N.C.G.S. § 7A-651(e) (Supp. 1997) (findings must be supported by "substantial evidence in the record that the judge . . . explored and exhausted or considered inappropriate" the community resources needed to meet the needs of the juvenile); *In re Bullabough*, 89 N.C. App. 171, 184, 365 S.E.2d 642, 649 (1988). The trial court "ha[s] an affirmative obligation to inquire into and to seriously consider the merits of alternative dispositions." *In re Groves*, 93 N.C. App. 34, 39, 376 S.E.2d 481, 484 (1989) (rejecting as inadequate the court counselor's testimony that "[w]e don't have a Drug Rehabilitation Program").

In this case, the Juvenile contends the evidence does not support the trial court's finding, and we agree. There simply is no evidence that any actual attempts to investigate alternatives to commitment were made. The court counselor merely stated that the Juvenile

---

1. We note that Article V(a) and Article VI of the newly enacted "Interstate Compact on the Placement of Children," to be codified at N.C. Gen. Stat. § 7B-3800 (effective 1 July 1999), provides that North Carolina can impose the institutional placement of adjudicated juvenile delinquent children in an out-of-state jurisdiction, with North Carolina retaining jurisdiction to determine the proper disposition.

"probably" would not be accepted into alternative placements. Accordingly, we must vacate the order of commitment and remand for a new dispositional hearing.

Vacated and remanded.

Judges WALKER and SMITH concur.